**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ABDULRAHMAN MOHAMMED
HASSAN; 2020 Darlington Court,
Shreveport, LA 71118,

Plaintiff,

v.

U.S. CITIZENSHIP AND
IMMIGRATION SERVICES;
5900 Capital Gateway Drive
Mail Stop 2120
Camp Springs, MD 20588-0009;

and

U.S. DEPARTMENT OF
HOMELAND SECURITY;
2707 Martin Luther King Jr. Avenue, SE
Mail Stop 0485
Washington, DC 20528,

Defendants.

Case No.: 1:26-cv-3082

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552**

## PRELIMINARY STATEMENT

1. This case asks whether the Department of Homeland Security may prosecute a man for removal at a hearing set for September 10, 2026, while its own component withholds, for ninety days and counting, the government-stamped records that will show whether he is a United States citizen. Since June 4, 2026, Plaintiff Abdulrahman Mohammed Hassan has pursued every avenue the Freedom of Information Act ("FOIA") provides — a complete request for his

deceased father's Alien File accompanied by proof of death and certified, government-authenticated English translations, an administrative appeal, eight requests for expedited processing, mediation through the federal FOIA Ombudsman, and certified pre-suit notice to the Department of Justice — and Defendant U.S. Citizenship and Immigration Services ("USCIS") has produced nothing. FOIA required a determination within twenty business days, or thirty under the extension USCIS invoked for itself, 5 U.S.C. § 552(a)(6)(A)–(B); requires expedited processing where delay threatens "[t]he loss of substantial due process rights," 6 C.F.R. § 5.5(e)(1)(iii); deems Plaintiff's administrative remedies exhausted by the agency's silence, 5 U.S.C. § 552(a)(6)(C)(i); and has already been enforced against USCIS through a nationwide permanent injunction commanding adherence to these very deadlines for Alien File requests, *Nightingale v. USCIS*, 507 F. Supp. 3d 1193 (N.D. Cal. 2020). Because every statutory deadline has lapsed, because each reason USCIS has offered is refuted by USCIS's own correspondence, and because this Court reviews the matter de novo with the burden on the agency, 5 U.S.C. § 552(a)(4)(B), Plaintiff is entitled to an order compelling production of the complete Alien File by 12:00 noon Central Time on Friday, September 4, 2026 — in time for counsel to use it.

2. Plaintiff files concurrently an emergency ex parte application for a temporary restraining order seeking that production deadline. The exhibits cited herein as "Ex. A" through "Ex. EE" are true copies of the records and correspondence described, filed with that application.

## I. JURISDICTION AND VENUE

3. This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B), which vests the United States District Court for the District of Columbia with jurisdiction to enjoin an agency from

withholding agency records and to order the production of any agency records improperly withheld, and under 28 U.S.C. § 1331. Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202.

4. Venue lies in this District under 5 U.S.C. § 552(a)(4)(B), which makes this District a proper venue for every FOIA action, and under 28 U.S.C. § 1391(e)(1), because Defendants are agencies of the United States and reside in this District.

5. Plaintiff's administrative remedies are deemed exhausted under 5 U.S.C. § 552(a)(6)(C)(i) because Defendants failed to comply with the applicable time limits, as set out below.

6. Good cause exists to expedite this action under 28 U.S.C. § 1657(a) and 5 U.S.C. § 552(a)(6)(E)(iii).

## II. PARTIES

7. Plaintiff Abdulrahman Mohammed Hassan was born on May 4, 1984, in Yemen (Ex. F), resides in Shreveport, Louisiana (Ex. G), and is the requester on the FOIA request at issue (Ex. H). He is in removal proceedings before the Dallas Immigration Court under Alien Number 056-518-233, with an individual hearing set for September 10, 2026, at 1:00 p.m. Central Time. (Ex. B.)

8. The subject of the requested records is Plaintiff's father, Mohamed Mohamed Hassan, born July 10, 1935, in Yemen — a naturalized United States citizen (Certificate of Naturalization No. 8904026; Petition No. 297007) who held U.S. Passport No. 218944234, issued August 9, 2006 (Ex. D), and who died in Yemen, his death registered on November 7, 2013, with the Civil Status Department in Taiz (Ex. E).

9. Defendant USCIS is a component of the Department of Homeland Security and an agency within the meaning of 5 U.S.C. § 552(f)(1). USCIS is the custodian of Alien Files ("A-Files"), including the A-File of Plaintiff's father, and its National Records Center in Lee's Summit, Missouri processed the request at issue. (Ex. H.)

10. Defendant U.S. Department of Homeland Security ("DHS") is the parent agency of USCIS and an agency within the meaning of 5 U.S.C. § 552(f)(1). DHS promulgated the FOIA regulations at 6 C.F.R. Part 5 that govern the request, and DHS, through its components, is prosecuting the removal case against Plaintiff. As the *Nightingale* court observed of these Defendants, they are at once the custodians of A-Files and the prosecutors in removal proceedings. 507 F. Supp. 3d 1193.

## III. LEGAL FRAMEWORK AND THE NIGHTINGALE NATIONWIDE INJUNCTION

11. Upon receiving a request that reasonably describes the records sought and complies with published rules, an agency must make the records "promptly available." 5 U.S.C. § 552(a)(3)(A).

12. The agency must determine whether to comply within twenty business days of receipt and immediately notify the requester of its determination, the reasons therefor, and the right to appeal. 5 U.S.C. § 552(a)(6)(A)(i). In "unusual circumstances" the agency may extend that period by no more than ten business days. 5 U.S.C. § 552(a)(6)(B).

13. A "determination" within the meaning of the statute "must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013).

14. An administrative appeal must be decided within twenty business days of its receipt. 5 U.S.C. § 552(a)(6)(A)(ii).

15. If the agency fails to comply with these time limits, the requester "shall be deemed to have exhausted his administrative remedies" and may proceed directly to court. 5 U.S.C. § 552(a)(6)(C)(i).

16. DHS regulations require that requests "shall be" processed on an expedited basis whenever they involve, among other grounds, "[t]he loss of substantial due process rights." 6 C.F.R. § 5.5(e)(1)(iii). A determination on a request for expedited processing must be made "within ten calendar days of its receipt," 6 C.F.R. § 5.5(e)(4), and agency action on expedition is subject to judicial review, 5 U.S.C. § 552(a)(6)(E)(iii).

17. In FOIA litigation the district court "shall determine the matter de novo," and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B).

18. USCIS does not come to these obligations with a clean slate. In *Nightingale v. USCIS*, a certified nationwide class of A-File requesters whose requests had been pending more than thirty business days without a determination obtained summary judgment, *see* 507 F. Supp. 3d 1193 (N.D. Cal. 2020) , and USCIS was "permanently enjoined from further failing to adhere to the statutory deadlines for adjudicating A-File FOIA requests, as set forth in 5 U.S.C. §§ 552(a)(6)(A) and (B)." 507 F. Supp. 3d 1193 (N.D. Cal. 2020). The *Nightingale* court found that FOIA is, as a practical matter, the only mechanism by which noncitizens and their counsel can obtain an A-File, and observed — quoting Congress — that "[l]ong delays in access can mean no access at all." *Id.* (quoting H.R. Rep. No. 104-795).

19. Courts enforce these deadlines on emergency timetables when removal hearings are imminent. In *Castillo Gomez v. USCIS*, No. 5:26-cv-06134-NW, 2026 WL 1773909 (N.D. Cal.

June 21, 2026), the court issued a temporary restraining order two days after filing, directing production of the complete A-File by the next afternoon, ahead of a removal hearing. And a court of this District has rejected USCIS's practice of answering a pending FOIA request by demanding that the requester start over with a new one. *Brown v. USCIS*, No. 1:23-cv-3669 (RCL) (D.D.C. Sept. 20, 2024), ECF Nos. 15–16.

## IV. THE DECEASED FATHER'S RECORDS AND PLAINTIFF'S CLAIM TO CITIZENSHIP AT BIRTH

20. A child born abroad before November 14, 1986, to one United States citizen parent and one alien parent acquired United States citizenship at birth if the citizen parent had been physically present in the United States for periods totaling not less than ten years before the child's birth, at least five of them after the age of fourteen. Former INA § 301(g), 8 U.S.C. § 1401(g) (1982) (as in effect on May 4, 1984). Congress later reduced those periods, but only for births on or after November 14, 1986. Pub. L. No. 99-653 (1986).

21. Two facts therefore decide Plaintiff's claim: whether his father was a United States citizen on May 4, 1984, and whether, by that date, the father's physical presence in the United States totaled ten years, five of them after age fourteen.

22. The date printed on the father's Certificate of Naturalization answers the first question. The stamped record of the father's entries into and departures from the United States answers the second. Defendants hold both.

23. Plaintiff moved in his removal proceedings to terminate on the ground that he is a United States citizen. The Immigration Judge denied the motion on the record then available.

24. The father cannot testify; he died in 2013. (Ex. E.) What remains is paper — and the decisive paper is in Defendants' file room.

## V. THE SWORN RESIDENCE PERIODS, THE EARNINGS RECORD, AND THE DECISIVE MONTHS IN DEFENDANTS' FILE

25. The Department of State searched its passport files for the father's records and produced them under Case No. F-2026-19367, excising five documents in part under Exemption (b)(6) and denying none. (Ex. C.)

26. Among the records State produced is the father's sworn application for a United States passport. On page two, in the box captioned "To Be Completed by an Applicant Who Became a Citizen Through Naturalization," the father stated that he immigrated to the United States in 1964, that he was naturalized at Detroit, Michigan, and that he resided continuously in the United States from 1964 to 1968, from 1969 to 1972, and from 1974 to 1977. (Ex. C [second passport application, p. 2];

27. The Social Security Administration's certified earnings record for the father (SSN 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) shows reported FICA earnings, year by year: $1,244.16 in 1964; $2,874.26 in 1965; $4,850.86 in 1966; $5,023.72 in 1967; $760.32 in 1968; $7,699.35 in 1969; $7,800.00 in 1970; $460.69 in 1971; zero in 1972 and 1973; $538.26 in 1974; zero in 1975; $2,098.00 in 1976; zero in 1977; $4,088.00 in 1978; $3,281.00 in 1979; and $3,282.00 in 1980. (Ex. C at 1.)

28. The three sworn residence periods run from 1964 to 1977. Counted in whole calendar years, they span the statutory decade. Counted in months, they may or may not:

29. In what month of 1964 did the father arrive? A first period that opened in mid-1964 contributes months, not a year.

30. How long was the father abroad in 1968 and 1969, between the first period and the second? His 1968 earnings — $760.32, beside $5,023.72 the year before and $7,699.35 the year after — do not say; only his departure and readmission stamps do.

31. In what month of 1974 did the third period open, and in what month of 1977 did it close? The earnings record — zero in 1972, 1973, and 1975, and again in 1977 — frames the question and cannot answer it.

32. Every month gained or lost on those questions is counted toward, or against, the statutory ten years. And every one of those months was recorded, at the time, by the Government itself: on the immigrant visa the immigration authorities issued in 1964, on the admission and departure records they stamped examined at the N-400 interview, and on the Form N-400 application for naturalization on which they required the father to list his residences and his absences before they naturalized him at Detroit. Defendant USCIS is the successor to and custodian of those records. The A-File is "the official Government record" of a person's passage through the immigration process, including records of prior entries and admissions. *Nightingale*, 507 F. Supp. 3d 1193.

33. The State Department's file supplies the father's own sworn statements, given in years. Defendants' file supplies the Government's stamps, given in dates.

34. Plaintiff asked Defendants for that file on June 4, 2026 — ninety-eight days before his hearing.

## VI. THE JUNE 4, 2026 REQUEST AND THE STATUTORY DEADLINES

35. On June 4, 2026, through counsel, Plaintiff submitted a FOIA request to USCIS through the agency's FIRST online portal, seeking "any and ALL records pertaining to my Deceased father, Mohamed Mohamed Hassan. DOB: 07/10/1935." (Ex. H.) USCIS assigned Control No. NRC2026232165 and Tracking No. NRC2026348163REQ. (Exs. H, N.)

36. Because Plaintiff does not know his father's Alien Registration Number, the request identified the father by full name, date and country of birth, U.S. Passport No. 218944234,

Certificate of Naturalization No. 8904026, and Petition No. 297007, and identified Plaintiff as the father's child. (Ex. H.)

37. With the request, Plaintiff uploaded nine supporting documents: the father's Certificate of Naturalization; the father's U.S. passport; the father's death certificate; Plaintiff's birth certificate; Plaintiff's Louisiana driver's license; Plaintiff's signed declaration; a Form G-28; and signed Forms DS-4240 and DS-4240-R. (Ex. H.) The Arabic-language death and birth certificates were accompanied by complete English translations certified by Nizar for Translation & General Services and bearing the authentication of the Republic of Yemen Civil Status & Civil Registration Authority and the Ministry of Foreign Affairs – Taiz Office. (Exs. E, F.)

38. On June 11, 2026, USCIS acknowledged receipt as of June 4, 2026, placed the request in its "complex track," and announced that "USCIS will invoke a 10 business day extension for your request pursuant to 5 U.S.C. § 552(a)(6)(B)." (Ex. H.) The request constituted an agreement to pay fees up to $25.00. (Ex. H.)

39. Twenty business days from June 4, 2026 — excluding the June 19 and observed July 3 federal holidays — was July 6, 2026. With the ten-day extension USCIS invoked for itself, a determination was due no later than July 20, 2026.

40. On June 10, 2026, counsel's office called the USCIS Contact Center with Plaintiff on the line. The representative stated that the Contact Center cannot access FOIA requests, that FOIA processing times are "approximately 217 days," that she knew of no way to expedite through the Contact Center, and that no direct telephone contact for the National Records Center exists. (Ex. I.) Two hundred seventeen calendar days from June 4, 2026 falls in January 2027 — months after the September 10 hearing; if measured in business days, later still.

## VII. THE ADMINISTRATIVE CLOSURE

41. USCIS made no determination by July 6. It made no determination by July 20. It has made no determination to this day.

42. On July 13, 2026 — nine days before even its extended deadline — USCIS sent counsel a letter stating that it was "administratively closing" the request because "[s]ome or all of the required information that you submitted was: • Illegible or • In a foreign language and not accompanied by a certified English translation." (Ex. N.) The letter did not identify which document it meant. It identified no records to be produced and none to be withheld. It closed: "Your case has been closed with no further action taken." (Ex. N.)

43. The documents on file when USCIS wrote those words included the original Arabic death and birth certificates together with complete certified English translations, each authenticated by the Republic of Yemen Civil Status & Civil Registration Authority and the Ministry of Foreign Affairs – Taiz Office. (Exs. E, F, H.)

44. The Department of State received the same certificates, the same translations, and the same authentication pages with Plaintiff's parallel request — and processed that request to completion, producing the father's passport records. (Ex. C.)

## VIII. THE ADMINISTRATIVE APPEAL

45. On July 24, 2026, Plaintiff filed an administrative appeal of the closure through USCIS's portal, Appeal No. APP2026029027REQ, stating: "We appeal the administrative closure of FOIA Control No. NRC2026232165," explaining that the certificates "were submitted with complete English translations prepared by Nizar for Translation & General Services" bearing Yemeni government authentication, and re-uploading the death and birth certificates with

their certified translations and authentication pages. (Exs. O, Z.) The portal confirmed the submission the same day. (Ex. Z.)

46. On July 29, 2026, USCIS responded by email: "I have reviewed the supporting documents we received on your request. The scans were not clear. To obtain a copy of your records, please submit a new FOIA request." The same email offered: "If you would like to submit the supporting documents to this email after you make a new request, we can have the PDF files scanned to your case." (Ex. P.)

47. A decision on the appeal was due within twenty business days — by August 21, 2026. 5 U.S.C. § 552(a)(6)(A)(ii). USCIS has issued none.

## IX. THE EIGHT REQUESTS FOR EXPEDITED PROCESSING AND HOW USCIS ANSWERED THEM

48. June 10, 2026: counsel requested expedited processing by email, citing the removal hearing then set for June 27, 2026. (Ex. J.)

49. June 12, 2026: USCIS denied expedition in a form email listing the four regulatory grounds — the third rendered as "The loss of substantial due process rights; (job, travel, real ID, school, and/or petition deadlines are not covered)" — followed by a single sentence: "Your request does not establish one of the above situations." (Ex. K.) A removal hearing is not a job, travel, REAL ID, school, or petition deadline.

50. June 12, 2026: counsel sought reconsideration, invoking the loss of substantial due process rights in the removal proceeding. (Ex. L.)

51. June 15, 2026: USCIS answered: "Unfortunately, we are only able to move forward the subject of the record's file. As this file does not belong to your client, we are not able to move it forward based on court dates." (Ex. M.) The regulation USCIS was applying reads, in full,

"The loss of substantial due process rights." 6 C.F.R. § 5.5(e)(1)(iii). It does not say whose file; it protects whose rights.

52. August 5, 2026: after USCIS's instruction to start over, counsel demanded supervisory review and formally requested expedited processing under 6 C.F.R. § 5.5(e)(1)(iii), invoked the ten-calendar-day decision deadline of 6 C.F.R. § 5.5(e)(4), and warned that suit would follow within seven days. (Ex. R.) A determination was due by August 15, 2026. None issued.

53. August 5–6, 2026: counsel mailed formal notice of intent to file this action, with the full supporting record enclosed, by certified mail to the Federal Programs Branch, Civil Division, U.S. Department of Justice, in Washington, D.C. (Exs. AA, BB.)

54. August 17, 2026: USCIS wrote: "USCIS has received a large influx of requests in recent months delaying response times. We process requests on a first in first out basis." (Ex. S.) Counsel re-sent the expedited demand the same morning. (Ex. T.)

55. August 20, 2026: counsel submitted a further formal request for expedited processing with the certification required by 6 C.F.R. § 5.5(e)(3), copying the Office of Government Information Services ("OGIS"), and attaching the hearing notice and the authenticated certificates yet again. (Ex. U.) On August 21, counsel separately requested OGIS mediation (Ex. CC); OGIS auto-responded (Ex. DD); and OGIS's telephone line advised it could not assist by phone (Ex. EE).

56. August 25, 2026: counsel re-sent the formal request. (Ex. V.)

57. August 26, 2026: USCIS denied expedition again — in the same form email, listing the same four grounds, ending with the same single sentence: "Your request does not establish one of the above situations." (Ex. W.) The denial does not mention the September 10 hearing.

It does not mention the appeal. It does not explain why a man defending against removal has not shown a threatened "loss of substantial due process rights."

58. August 27, 2026: counsel twice sought reconsideration, pointing out that USCIS's denial "did not explain why the ground we specifically invoked . . . was not met," and citing *Castillo Gomez*. (Exs. X, Y.) As counsel wrote USCIS that day: "A record delivered too late to review is no different than no record at all." (Ex. Y.)

59. Throughout, telephone review was unavailable: on August 3, 2026, counsel's office held for approximately one hour, the call with Ms. Goldberg was disconnected, no supervisor was made available, and the agency confirmed that FOIA requests cannot be reviewed by phone. (Ex. Q.)

## X. THE SEPTEMBER 10, 2026 HEARING AND THE STATUS AS OF FILING

60. The individual hearing has already been reset — from a June 27, 2026 setting (Ex. J), to July 10, 2026 (Ex. A), to September 10, 2026

61. The Department of State offers passport appointments on September 8, 2026, and seats on that date remain open; it is the last date on which Plaintiff could appear for a passport appointment before the hearing.

Plaintiff cannot book or complete a passport application without the documentary evidence of his father's citizenship and physical presence that Defendants hold. (Id.)

62. As of the filing of this Complaint, Plaintiff's request has been pending more than sixty business days. USCIS has produced no records, issued no determination within the meaning of 5 U.S.C. § 552(a)(6)(A) and *CREW*, decided no appeal, and issued no reasoned ruling on expedition.

63. The *Nightingale* injunction addresses A-File FOIA requests pending beyond the statutory deadlines without a determination. This is an A-File FOIA request pending more than sixty business days without a determination.

**COUNT ONE**
***Failure to Make a Timely Determination***
***(Violation of FOIA, 5 U.S.C. §§ 552(a)(6)(A)(i), (a)(6)(B), (a)(6)(C)(i) — Against All Defendants)***

64. Plaintiff realleges and incorporates every preceding paragraph.

65. Plaintiff's June 4, 2026 request reasonably described the records sought and was made in accordance with Defendants' published rules; USCIS acknowledged it, tracked it, and assigned it to the complex track. (Ex. H.)

66. Defendants were obligated to make a determination within twenty business days of receipt — or, at the outside, within the thirty business days USCIS gave itself by invoking 5 U.S.C. § 552(a)(6)(B) — and to notify Plaintiff of the determination, the reasons therefor, and his appeal rights. 5 U.S.C. § 552(a)(6)(A)(i).

67. Defendants made no such determination by July 6, 2026, by July 20, 2026, or at any time since. The July 13, 2026 administrative closure identified no records to be produced and none to be withheld, and rested on a stated ground — illegibility or missing certified translations — refuted by the certified, authenticated translations submitted on day one and processed without difficulty by a sister agency. (Exs. C, E, F, H, N.) It was not a determination. *CREW*, 711 F.3d at 186.

68. Plaintiff's administrative remedies are deemed exhausted. 5 U.S.C. § 552(a)(6)(C)(i).

## COUNT TWO

***Unlawful Withholding of, and Failure to Search for and Produce, Responsive Records***
***(Violation of FOIA, 5 U.S.C. §§ 552(a)(3)(A), (a)(3)(C), (a)(4)(B) — Against All Defendants)***

69. Plaintiff realleges and incorporates every preceding paragraph.

70. Upon receipt of Plaintiff's request, Defendants were obligated to conduct a search reasonably calculated to locate the responsive records and to make those records promptly available. 5 U.S.C. § 552(a)(3)(A), (C).

71. Ninety days after receipt, Defendants have produced nothing: not the A-File, not a page of it, not a single responsive record. Defendants have asserted no exemption and identified no lawful basis for withholding.

72. Defendants' withholding of the requested records is unlawful, and Plaintiff is entitled to an order compelling Defendants to complete any remaining search forthwith and to produce the complete A-File and all other responsive records by 12:00 noon Central Time on September 4, 2026, together with an index under *Vaughn v. Rosen* justifying any information withheld. 5 U.S.C. § 552(a)(4)(B).

## COUNT THREE

***Failure to Make a Timely Determination on the Administrative Appeal***
***(Violation of FOIA, 5 U.S.C. §§ 552(a)(6)(A)(ii), (a)(6)(C)(i) — Against All Defendants)***

73. Plaintiff realleges and incorporates every preceding paragraph.

74. Plaintiff filed Appeal No. APP2026029027REQ on July 24, 2026. (Exs. O, Z.) Defendants were obligated to decide it within twenty business days — by August 21, 2026. 5 U.S.C. § 552(a)(6)(A)(ii).

75. Defendants have issued no decision. Their only responsive act was the July 29, 2026 email directing Plaintiff to "submit a new FOIA request." (Ex. P.)

76. Defendants' failure to decide the appeal violates 5 U.S.C. § 552(a)(6)(A)(ii), and Plaintiff's administrative remedies are deemed exhausted, 5 U.S.C. § 552(a)(6)(C)(i).

**COUNT FOUR**
***Wrongful Denial of Expedited Processing***
***(Violation of FOIA, 5 U.S.C. § 552(a)(6)(E); 6 C.F.R. § 5.5(e) — Against All Defendants)***

77. Plaintiff realleges and incorporates every preceding paragraph.

78. FOIA and Defendants' regulations require expedited processing where a request involves "[t]he loss of substantial due process rights." 5 U.S.C. § 552(a)(6)(E); 6 C.F.R. § 5.5(e)(1)(iii). Plaintiff demonstrated that need eight times over: a removal hearing set for September 10, 2026, at which the requested records bear on whether he may be removed at all. The August 20, 2026 request carried the certification required by 6 C.F.R. § 5.5(e)(3). (Ex. U.)

79. Defendants' June 15, 2026 position — that the file "does not belong to your client" and so cannot be moved forward "based on court dates" (Ex. M) — imports a limitation the regulation does not contain. The due process rights at stake in a removal proceeding belong to the respondent facing removal: the requester.

80. Defendants' denials were untimely under 6 C.F.R. § 5.5(e)(4) — the August 5 formal request required a determination by August 15; the answer came August 26 — and unreasoned: a verbatim restatement of the four grounds followed by one conclusory sentence, without any engagement with the hearing, the appeal, or the ground invoked. (Exs. K, W.)

81. Defendants' denial of expedited processing was unlawful, and Plaintiff is entitled to expedited processing of the request and the appeal, and to expedited treatment of this action. 5 U.S.C. §§ 552(a)(6)(E)(iii), 552(a)(4)(B); 28 U.S.C. § 1657(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Assume jurisdiction and expedite this action pursuant to 28 U.S.C. § 1657(a) and 5 U.S.C. § 552(a)(6)(E)(iii);

(b) Declare that Defendants' failure to make a timely determination, to decide the administrative appeal, to grant expedited processing, and to produce the requested records violates 5 U.S.C. § 552 and 6 C.F.R. § 5.5;

(c) Order Defendants to complete any remaining search immediately and to produce to Plaintiff the complete Alien File of Mohamed Mohamed Hassan (born July 10, 1935; Certificate of Naturalization No. 8904026; Petition No. 297007; U.S. Passport No. 218944234) and all other records responsive to FOIA Control No. NRC2026232165, by 12:00 noon Central Time on Friday, September 4, 2026, and in any event sufficiently in advance of the September 8, 2026 passport appointment for counsel to review and use the records and for Plaintiff to apply for a United States passport, because the Immigration Judge will not entertain a further motion to terminate on the existing record and will accept only a United States passport as proof of Plaintiff's citizenship;

(d) Order that any information withheld from the production be identified in an index under *Vaughn v. Rosen*, served within twenty-four hours of production, justifying each withholding;

(e) Enjoin Defendants from relying on the July 13, 2026 administrative closure or from requiring Plaintiff to file a new FOIA request as a condition of processing or production;

(f) Retain jurisdiction to enforce the Court's orders;

(g) Award Plaintiff his reasonable attorney fees and litigation costs under 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412; and

(h) Grant such other and further relief as the Court deems just and proper.

Dated: September 2, 2026

Respectfully submitted,

*/s/ Julie A. Goldberg*

Julie A. Goldberg
3005 Oakwood Boulevard
Telephone: (818) 999-1559
Facsimile: (818) 999-1449
ecf@goldbergimmigration.com
*Counsel for Plaintiff*