**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ABDULRAHMAN MOHAMMED HASSAN;**
2020 Darlington Court,
Shreveport, LA 71118,

Plaintiff,

v.

**U.S. CITIZENSHIP AND IMMIGRATION SERVICES;**
5900 Capital Gateway Drive
Mail Stop 2120
Camp Springs, MD 20588-0009;

and

**U.S. DEPARTMENT OF HOMELAND SECURITY;**
2707 Martin Luther King Jr. Avenue, SE
Mail Stop 0485
Washington, DC 20528,

Defendants.

Case No.: 1:26-cv-3082

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EMERGENCY EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

**EXPEDITED CONSIDERATION REQUESTED — REMOVAL HEARING SET FOR SEPTEMBER 10, 2026**

## INTRODUCTION

The Department of Homeland Security is prosecuting Plaintiff's removal at a hearing set for September 10, 2026, while its own component withholds the government-stamped records that will show whether he is a United States citizen. Plaintiff requested his deceased father's complete Alien File on June 4, 2026, with proof of death and certified, government-authenticated English translations; ninety days later, USCIS has produced not one page, made no determination, decided no appeal, and denied or ignored eight requests for expedited processing. (Goldberg Decl. ¶ 2, Exs. A–GG.) FOIA required a determination by July 20, 2026 at the latest, 5 U.S.C. § 552(a)(6)(A)–(B); Defendants' own regulation mandates expedited processing where

delay threatens "[t]he loss of substantial due process rights," 6 C.F.R. § 5.5(e)(1)(iii); the statute empowers this Court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld," 5 U.S.C. § 552(a)(4)(B); and a nationwide permanent injunction already commands USCIS to obey these very deadlines for Alien File requests, *Nightingale v. USCIS*, 507 F. Supp. 3d 1193 (N.D. Cal. 2020) (ECF No. 89 at 27).[1] Even under the most demanding standard for mandatory relief, a clear showing of entitlement, or extreme or very serious damage, Plaintiff prevails, because the violations are arithmetic, the proof is Defendants' own correspondence, and an order compelling production by 12:00 noon Central Time on Friday, September 4, 2026 is the only relief that can arrive before the harm becomes permanent.

Notice of this Application has been given. As detailed in the concurrently filed Declaration of Julie A. Goldberg ("Goldberg Decl.") ¶¶ 3–6, counsel gave the Federal Programs Branch of the Department of Justice's Civil Division formal notice of intent to file this action by certified mail on August 6, 2026, enclosing the supporting record (Exs. AA, BB); emailed the Complaint and all exhibits, as filed, to three attorneys of the Department of Justice on September 2, 2026, advising them of this forthcoming Application and asking whether the United States would oppose it (Ex. FF); and furnished the Application and all supporting papers to the same attorneys upon filing (Goldberg Decl. ¶ 5). Fed. R. Civ. P. 65(b)(1); LCvR 65.1(a). Should the Court nonetheless direct a response before ruling, as the court did in *Castillo Gomez v. USCIS*, No. 5:26-cv-06134-NW, 2026 WL 1773909 (N.D. Cal. June 21, 2026) (ECF No. 11), where the court ordered the Government to respond to an ex parte FOIA application and granted the

---

[1] Pin citations to Nightingale and Castillo Gomez are to the slip opinions, which are cited by docket entry (Nightingale, No. 3:19-cv-03512-WHO, ECF No. 89 (N.D. Cal. Dec. 17, 2020); Castillo Gomez, No. 5:26-cv-06134-NW, ECF No. 11 (N.D. Cal. June 21, 2026)). Copies will be furnished to the Court on request.

temporary restraining order two days after the complaint was filed — Plaintiff asks that the schedule preserve the September 4 production deadline.

## I. RELIEF REQUESTED

Plaintiff respectfully asks that the Court enter a temporary restraining order:

(1) directing Defendants to complete any remaining search immediately and to produce to Plaintiff the complete Alien File of Mohamed Mohamed Hassan (born July 10, 1935; Certificate of Naturalization No. 8904026; Petition No. 297007; U.S. Passport No. 218944234), and all other records responsive to FOIA Control No. NRC2026232165, without redactions, by 12:00 noon Central Time on Friday, September 4, 2026 or, if the Court's order issues after September 3, 2026, within twenty-four hours of entry of the order and in no event later than 9:00 a.m. Central Time on Tuesday, September 8, 2026;

(2) in the alternative as to any information Defendants contend is exempt, directing Defendants to produce all reasonably segregable non-exempt portions by the same deadline and to serve, within twenty-four hours of production, an index under *Vaughn v. Rosen* identifying each withholding, the exemption claimed, and a particularized justification, so that any dispute can be resolved, including by in camera review, before September 8, 2026;

(3) enjoining Defendants from relying on the July 13, 2026 administrative closure, and from requiring Plaintiff to file a new FOIA request, as a condition of processing or production;

(4) ordering Defendants to show cause why a preliminary injunction should not issue requiring their full and continued compliance with FOIA; and

(5) dispensing with security under Rule 65(c).

Each item of interim relief sought here is encompassed within, and narrower than, the final relief demanded in the Complaint's Prayer for Relief, items (c) through (e); this Application seeks only the portion of that relief that must arrive before September 8, 2026 to be of any use.

## II. STATEMENT OF FACTS

### A. The records only Defendants hold decide whether Plaintiff is a citizen.

Plaintiff was born in Yemen on May 4, 1984. (Ex. F.) Under the law in force that day, he acquired United States citizenship at birth if his father, a naturalized United States citizen, had been physically present in the United States for periods totaling ten years before the birth, five of them after age fourteen. Former INA § 301(g), 8 U.S.C. § 1401(g) (1982). In his sworn passport application, produced by the Department of State under Case No. F-2026-19367, the father stated that he immigrated in 1964, was naturalized at Detroit, and resided continuously in the United States from 1964 to 1968, from 1969 to 1972, and from 1974 to 1977. (Ex. C.) Counted in whole years, those periods span the statutory decade; counted in months, they may or may not, and three questions decide it. In what month of 1964 did the father arrive? How long was he abroad in 1968 and 1969, where his earnings record drops from $5,023.72 to $760.32 and back to $7,699.35? (Ex. C at 1.) In what months did the third period open in 1974 and close in 1977? Every answer was stamped, at the time, by the Government itself, on the 1964 immigrant visa, on the admission and departure records at the ports, and on the Form N-400 on which the father listed his residences and absences before Detroit naturalized him, and every one of those documents lives in the Alien File of which Defendant USCIS is custodian. See *Nightingale*, 507 F. Supp. 3d 1193 (ECF No. 89 at 5 & n.1) (the A-File is "the official Government record" of a

person's passage through the immigration process, including records of prior entries and admissions).

The father died in 2013; he cannot testify. (Ex. E.) The Immigration Judge has denied Plaintiff's motion to terminate on the ground of United States citizenship. A refiled motion on the same record will meet the same result; what would change the record is in Defendants' file room. The Immigration Judge has indicated that she will accept only a United States passport as proof of Plaintiff's citizenship (Compl. at 17, Prayer ¶ (c)); a passport carries the same force and effect as a certificate of naturalization as proof of citizenship, 22 U.S.C. § 2705; and the Department of State offers passport appointments on September 8, 2026 — the last date before the hearing — but Plaintiff cannot present an application without the documentary evidence of his father's physical presence that Defendants hold. (Compl. ¶ 61.) The removal hearing is set for September 10, 2026, at 1:00 p.m. Central Time. (Ex. B.)

**B. The request was complete on day one; every deadline has lapsed.**

Plaintiff filed his FOIA request on June 4, 2026 — ninety-eight days before the hearing — through USCIS's FIRST portal, as a request for another person's immigration records, seeking "any and ALL records pertaining to my Deceased father." The request identified the father by name, date and country of birth, passport number, certificate number, and petition number; identified Plaintiff as his child; and uploaded nine supporting documents, including the father's death certificate and Plaintiff's birth certificate, each with a complete English translation certified by Nizar for Translation & General Services and authenticated by the Republic of Yemen Civil Status & Civil Registration Authority and the Ministry of Foreign Affairs – Taiz Office. (Exs. E, F, H.) That is precisely what DHS's regulations prescribe for a request concerning a deceased third party: "proof that the individual is deceased (e.g., a copy of a death

certificate or an obituary)." 6 C.F.R. § 5.3(a)(4). USCIS acknowledged receipt, assigned the request to its complex track, and invoked for itself the ten-business-day extension of 5 U.S.C. § 552(a)(6)(B). (Ex. H.) A determination was due July 6, 2026, or with the extension, July 20, 2026. None has ever issued.

One point should be addressed at the outset. The FIRST portal asks whether the subject of record is in immigration court proceedings, and the request answered "No" — accurately, because the subject of record is Plaintiff's deceased father. (Ex. H.) Six days later, counsel told USCIS in writing that the requester himself was in removal proceedings with a hearing approaching, and asked for expedition on that basis. (Ex. J.) USCIS's June 15 answer shows that it understood exactly whose hearing was at stake and refused for that very reason: "we are only able to move forward the subject of record's file. As this file does not belong to your client, we are not able to move it forward based on court dates." (Ex. M.)

**C. The closure is refuted by Defendants' own file; the appeal sits undecided.**

On July 13, 2026, USCIS "administratively clos[ed]" the request on a checkbox ground — "Illegible or In a foreign language and not accompanied by a certified English translation" — without identifying any document, any record to be produced, or any record to be withheld: "Your case has been closed with no further action taken." (Ex. N.) The certified, authenticated translations were in USCIS's file when it wrote those words (Exs. E, F, H), and the Department of State processed the identical papers to completion, producing the father's passport records and denying no document. (Ex. C.) Plaintiff appealed on July 24, 2026, re-uploading the certificates, translations, and authentication pages. (Exs. O, Z.) USCIS's only response, on July 29, was an email: "The scans were not clear. To obtain a copy of your records, please submit a new FOIA

request" while simultaneously offering to scan the same documents "to your case." (Ex. P.) A decision on the appeal was due August 21, 2026. 5 U.S.C. § 552(a)(6)(A)(ii). None exists.

**D. Eight requests for expedited processing; two checkbox denials; one disqualifying admission.**

Between June 10 and August 27, 2026, Plaintiff requested expedited processing eight times, each time invoking the removal hearing. (Exs. J, L, R, T, U, V, X, Y.) USCIS's June 12 denial recited the four regulatory grounds — rendering the third as "The loss of substantial due process rights; (job, travel, real ID, school, and/or petition deadlines are not covered)" — and concluded in one sentence that "[y]our request does not establish one of the above situations." (Ex. K.) On June 15, USCIS explained itself: the file "does not belong to your client." (Ex. M.) The regulation reads, in full, "The loss of substantial due process rights." 6 C.F.R. § 5.5(e)(1)(iii). It does not ask whose file; it asks whose rights, and the rights at stake in a removal proceeding belong to the respondent facing removal, who is the requester here. The August 5 formal request, carrying a seven-day litigation warning, required a determination within ten calendar days, 6 C.F.R. § 5.5(e)(4); USCIS answered on August 17 only that it processes requests "on a first in first out basis." (Exs. R, S.) The August 20, 25, and 27 requests carried the certification that 5 U.S.C. § 552(a)(6)(E)(vi) and 6 C.F.R. § 5.5(e)(3) require. (Exs. U, V, Y.) On August 26, USCIS denied expedition again in the identical form email — mentioning neither the hearing, nor the appeal, nor the certification. (Ex. W.) As counsel wrote USCIS on August 27: "A record delivered too late to review is no different than no record at all." (Ex. Y.)

**E. The status as of filing.**

The request has now been pending more than sixty business days — three times the statutory maximum. USCIS has produced no records, made no determination within the meaning

of 5 U.S.C. § 552(a)(6)(A) and *Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013) ("*CREW*"), decided no appeal, issued no reasoned ruling on expedition, and asserted no exemption over any record. Its last substantive communications were the July 29 email directing Plaintiff to start over and the August 26 form denial. (Exs. P, W.)

## III. THE STANDARD — INCLUDING THE HIGHER STANDARD FOR MANDATORY RELIEF

A temporary restraining order is assessed under the preliminary-injunction standard: the movant must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest, upon "a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 22 (2008); see *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011). Where the Government is the opposing party, the final two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiff does not ask the Court to freeze anything; he asks it to command production. He therefore accepts, and briefs to, the more demanding formulation applied in this District to injunctions that would alter rather than preserve the status quo: the movant must show clearly that he is entitled to relief, or that extreme or very serious damage will result from the denial of preliminary relief. *Columbia Hospital for Women Foundation, Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997), aff'd, 159 F.3d 636 (D.C. Cir. 1998); *Electronic Privacy Information Center v. DOJ*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (applying that standard to a FOIA requester's motion to compel production); see *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (the power to issue a mandatory injunction "should be sparingly exercised"). Plaintiff satisfies both branches of that test, and two observations frame, without evading it.

First, the order sought is not judicial improvisation; it is the remedy Congress wrote. Section 552(a)(4)(B) expressly empowers this Court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." An injunction Congress itself authorized, enforcing a statutory duty already sixty business days past due, is the least extraordinary form of mandatory relief a court can grant. Second, the status quo the doctrine protects is the last peaceable, lawful state of affairs — an agency subject to a twenty-business-day statutory deadline and to the *Nightingale* nationwide injunction commanding adherence to it. Ninety days of noncompliance is not a status quo; it is the violation.

## IV. PLAINTIFF IS CLEARLY ENTITLED TO RELIEF

### A. The deadline violations are arithmetic, and Plaintiff's remedies are exhausted on any view.

The request was received June 4, 2026. A determination was due July 6, or July 20 with the extension USCIS invoked. 5 U.S.C. § 552(a)(6)(A)(i), (B). The appeal was filed July 24; a decision was due August 21. § 552(a)(6)(A)(ii). Each date is fixed by the calendar; each passed in silence or in a form email. A "determination" must "at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *CREW*, 711 F.3d at 186. The July 13 closure identified neither, and rested on a stated ground refuted by the certified, authenticated translations sitting in USCIS's own file and processed without difficulty by the Department of State. It was not a determination; it was a refusal to make one. Plaintiff's administrative remedies are accordingly deemed exhausted. 5 U.S.C. § 552(a)(6)(C)(i); *CREW*, 711 F.3d at 184–89; accord *Corbett v. TSA*, 116 F.4th 1024, 1028 (9th Cir. 2024).

The result is the same if Defendants characterize the closure as a determination that the request did not comply with 6 C.F.R. § 5.3. Plaintiff appealed that determination on July 24; twenty business days ran on August 21; and USCIS has decided nothing. § 552(a)(6)(A)(ii), (C)(i). Either the clock ran on the request, or it ran on the appeal; on no view is Plaintiff unexhausted. And a court of this District has already seen the maneuver USCIS deployed here — telling a requester whose request is pending to file a new one. Judge Lamberth observed that USCIS "appears to have pulled a bait-and-switch" by encouraging a duplicate request and then disclaiming any obligation to answer it, and ordered USCIS to respond to the original request, noting that the agency "should already be familiar with [the] requests by now and able to produce a determination." *Brown v. USCIS*, No. 1:23-cv-3669 (RCL), ECF No. 15 at 11–12 & n.4 (D.D.C. Sept. 20, 2024).

**B. The withholding has no defense — Defendants have never offered one.**

On de novo review the burden rests on the agency, 5 U.S.C. § 552(a)(4)(B), and here there is nothing to review: in ninety days Defendants have asserted no exemption, claimed no privilege, and identified no lawful basis for producing nothing. Nor could any exemption plausibly reach the whole file. The subject of the records is deceased, a fact Plaintiff proved with an authenticated death certificate on day one, and death sharply diminishes the personal-privacy interests that Exemption 6 protects. *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003). The surviving family whose privacy the law does protect, see *National Archives & Records Administration v. Favish*, 541 U.S. 157, 166–70 (2004), is the requester: the decedent's son, seeking his own father's file to prove his own citizenship. USCIS's own closure letter, faulting the death certificate's translation rather than Plaintiff's entitlement, concedes that a properly documented request by the child of a deceased subject is one USCIS processes, as its regulation

provides. 6 C.F.R. § 5.3(a)(4). The Department of State, on the identical papers, agreed: it searched, produced, and withheld nothing in full. (Ex. C.) That production does not discharge USCIS's independent obligation, see *International Refugee Assistance Project, Inc. v. USCIS*, No. 20-cv-4284 (RWL), ECF No. 55 (S.D.N.Y. July 22, 2021) (sister agency's production of parallel records does not moot FOIA claim against USCIS; ordering USCIS to search and produce, with a *Vaughn* index, within thirty days), but it does confirm that nothing about these records warrants wholesale withholding. Cf. *Dent v. Holder*, 627 F.3d 365, 374 (9th Cir. 2010) (access to the A-file that removal proceedings put in issue).

**C. The expedition denials were unreasoned, contrary to the regulation's text, and — as to the August 5 request — untimely.**

DHS's regulation mandates expedited processing of requests that "involve" "[t]he loss of substantial due process rights," 6 C.F.R. § 5.5(e)(1)(iii), and FOIA subjects agency action on expedition, and agency failure to act timely on it, to judicial review on the record before the agency. 5 U.S.C. § 552(a)(6)(E)(iii). The D.C. Circuit reviews denials under FOIA's statutory "compelling need" grounds de novo, and has reserved the standard for grounds an agency adds by regulation. *Al-Fayed v. CIA*, 254 F.3d 300, 305–08 & n.7 (D.C. Cir. 2001). Plaintiff prevails under any standard, because the administrative record on which review proceeds contains the hearing notices, the appeal, and the § 5.5(e)(3) certification, and two denials that engage none of them: a June 12 form email adding to the regulation a parenthetical Congress and DHS never wrote, and an August 26 denial repeating the same checkboxes and the same single sentence. (Exs. K, W.) The June 15 explanation, the file "does not belong to your client", rewrites the regulation: it conditions expedition on whose file is sought, when the provision turns on whose rights are threatened. (Ex. M.) An agency that never states why the ground actually invoked is

unmet, and that applies a limitation its regulation does not contain, has not exercised judgment to which any deference could attach. The August 5 request, moreover, drew no determination within the ten calendar days § 5.5(e)(4) allows; the first substantive answer came twenty-one days later. (Exs. R, S, W.)

In *Castillo Gomez*, the court held that a requester facing an imminent immigration hearing without his records had shown precisely "the loss of [his] substantial due process rights," and that the agency "ha[d] no basis to deny expedited processing." 2026 WL 1773909 (ECF No. 11 at 10) (construing 28 C.F.R. § 16.5(e)(1)(iii), the Department of Justice regulation whose text is identical to 6 C.F.R. § 5.5(e)(1)(iii)). The same is true here — with a removal hearing, not a bond hearing, at the end of the calendar.

## V. THE HARM IS IRREPARABLE AND EXTREME

In this Circuit the injury must be certain, great, actual, and imminent — and beyond remediation. *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). This injury is all four, and it runs on a calendar no court can turn back. Without the records by September 4, counsel cannot review them, present them at the September 10 hearing, or assemble and present a passport application at the September 8 appointment, the last available date before the hearing. Without them, Plaintiff appears on September 10 before an Immigration Judge who has already found the existing record insufficient and who will accept a United States passport that Plaintiff cannot apply for without the records Defendants hold. The foreseeable end of that sequence is a removal order entered against a man whose claim to be a United States citizen has never been tested against the Government's own stamped records of his father's presence, records the Government holds. Due process guarantees a full and fair opportunity to be heard "at a meaningful time and

in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), and the deprivation of constitutional rights "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); accord *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

Nor can production after the fact cure anything. Congress itself recognized that in FOIA "[l]ong delays in access can mean no access at all," H.R. Rep. No. 104-795, quoted in *Nightingale*, 507 F. Supp. 3d 1193 (ECF No. 89 at 4), and courts of this District have long granted preliminary relief compelling production where the value of the records evaporates with the passage of a date certain. *Cleaver v. Kelley*, 427 F. Supp. 80, 81–82 (D.D.C. 1976) (ordering production within twenty-one days, with an index of withholdings, where the requester "faces criminal prosecution" and "is confronted with an exceptional need and urgent need" for the records); *Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C. 1996) (preliminary injunction ordering compliance and a *Vaughn* index within thirty days ahead of a suppression hearing); *Electronic Privacy Information Center v. DOJ*, 416 F. Supp. 2d 30 (D.D.C. 2006) (preliminary injunction requiring expedited processing); *Center for Public Integrity v. DOD*, No. 19-cv-3265 (CKK), 2019 WL 6270921 (D.D.C. Nov. 25, 2019) ("where the records are sought to inform an imminent public debate, courts in this Circuit have granted preliminary injunctions"); *American Oversight v. Department of State*, No. 19-cv-2934 (CRC), 2019 WL 5665930 (D.D.C. Oct. 25, 2019) ("Time is clearly of the essence here."). The cases in which this District has declined such relief involved a general interest in contributing to public debate, untethered to any date on which the records would lose their value. See *Electronic Privacy Information Center*, 15 F. Supp. 3d at 46–47; *Sai v. TSA*, No. 14-0403, 2014 WL 3029217 (D.D.C. July 7, 2014) (no "time sensitive need for [the requested] information that will be irreparably lost if disclosure does not occur immediately"). This is the opposite case: one requester, one hearing, one date. A record

delivered on September 11 is, for the only purpose Plaintiff has ever stated, no record at all. That is the definition of irreparable — and of "extreme or very serious damage."

Defendants may suggest that Plaintiff has other avenues: a continuance from the Immigration Judge, a request to DHS trial counsel for the file, or an appeal to the Board of Immigration Appeals. None is an answer. A continuance is discretionary; the Immigration Judge has already reset this hearing once, and the *Nightingale* court found as a fact that ICE prosecutors oppose continuances sought to await A-File FOIA responses, so that respondents "must examine documents from the A-File for the first time at trial when the ICE prosecutor submits them." 507 F. Supp. 3d 1193 (ECF No. 89 at 6). Access through DHS counsel under *Dent* is Ninth Circuit law that does not govern the Dallas Immigration Court, and the *Nightingale* court found such requests "virtually always ineffective" even where *Dent* applies, because "FOIA is the primary, if not the only, mechanism for accessing A-Files." *Id.* (ECF No. 89 at 6 & n.2). And an appeal from a removal order entered on an incomplete record is not a hearing "at a meaningful time." *Mathews*, 424 U.S. at 333.

## VI. THE MERGED EQUITIES AND PUBLIC INTEREST FAVOR PRODUCTION

The Department of Homeland Security is prosecuting Plaintiff's removal through one arm while its other arm withholds the file that would decide it — the posture *Nightingale* described in finding that these Defendants are at once the custodians of A-Files and the prosecutors in removal proceedings. 507 F. Supp. 3d 1193 (ECF No. 89 at 1). As the *Castillo Gomez* court put it in rejecting the identical posture: "The Government cannot rely on Mr. Gomez's records yet simultaneously deny him access to it ahead of the hearing." 2026 WL 1773909 (ECF No. 11 at 14). The Government's only cognizable interests — lawful FOIA

administration, and removal proceedings that comport with due process — are vindicated, not injured, by production. *Mathews*, 424 U.S. at 333.

Any objection that Plaintiff would "jump the queue" fails three times over. The emergency is of Defendants' own making: they closed a compliant request on a refuted ground, instructed Plaintiff to start over, and sat silent on the appeal through every deadline. The statute and regulation themselves create the priority: expedited processing for precisely this circumstance is not queue-jumping but the queue Congress and DHS built, 6 C.F.R. § 5.5(e)(1)(iii), and whether a given requester has shown the need for it "requires an individualized inquiry into the facts of the case presented." *Aguilera*, 941 F. Supp. at 152. And courts routinely order agencies to prioritize and accelerate production notwithstanding backlogs. *Castillo Gomez*, 2026 WL 1773909 (ECF No. 11 at 15–16) (complete A-File, without redactions, by 5:00 p.m. the next day; "[t]he Government also has not shown how the immediate production of [one requester's] records will materially slow the processing of other requests"); *ACLU Foundation of Southern California v. ICE*, 705 F. Supp. 3d 1077, 1092 (C.D. Cal. 2023); *American Oversight*, 2019 WL 5665930 ("the extraordinary case where the public interest favors placing [the] requests ahead of other requests in the . . . FOIA queue"). Finally, there is no public interest, none, in removing a man from the United States before the Government's own records of whether he is a United States citizen have been examined. As Judge Sirica wrote fifty years ago, "the public interest lies in assuring a complete and thorough adjudication" of proceedings in which liberty is at stake. *Cleaver*, 427 F. Supp. at 82.

## VII. NO SECURITY SHOULD BE REQUIRED

Rule 65(c) commits the amount of security to the Court's discretion. An order requiring an agency to produce records the statute already obligates it to produce threatens Defendants

with no monetary loss for which security could compensate. In *Castillo Gomez*, the court required none, "considering the minimal risk of harm to the Government." 2026 WL 1773909 (ECF No. 11 at 17). Plaintiff asks the same here.

## VIII. CONCLUSION

The deadlines are statutory, the violations are established by Defendants' own correspondence, the entitlement is clear, and the damage, a removal hearing conducted while the Government withholds the records that would decide it, is as extreme and as serious as the doctrine contemplates. Plaintiff respectfully asks the Court to grant this Application, to order production of the complete Alien File by 12:00 noon Central Time on Friday, September 4, 2026, to issue the order to show cause, and to require no security. A proposed order is filed concurrently.

Dated: September 2nd , 2026

Respectfully submitted,

*/s/ Julie A. Goldberg*
Julie A. Goldberg
3005 Oakwood Boulevard
Melvindale, Michigan 48122
Telephone: (818) 999-1559
Facsimile: (818) 999-1449
ecf@goldbergimmigration.com
*Counsel for Plaintiff*